## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE GLUCAGON-LIKE PEPTIDE-I RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| BARBARA J. KELLY and DANIEL B. KELLY,<br>    *Plaintiffs,*<br>v.<br><br>NOVO NORDISK, INC. AND NOVO NORDISK A/S,<br>    *Defendants.* | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:25-cv-05251 |

**SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff(s) named below, by and through the undersigned counsel, file(s) this Short-Form Complaint and Demand for Jury Trial against the Defendants selected below. Plaintiff(s) adopt(s) and incorporate( s) by reference the allegations, claims, and the relief sought in Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint"), and any subsequent amended versions of such Master Complaint, filed in In Re: Glucagon-Like Peptide-I Receptor Agonists (GLP-1 RAs) Products Liability Litigation, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff(s) file(s) this Short-Form Complaint as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

## IDENTIFICATION OF PARTIES

**Plaintiff(s)**

1. Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): Barbara Jean Kelly

2. If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: n/a

as _____ of the estate of _____, deceased.

3. If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): n/a

4. If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: Daniel B. Kelly

**Defendant(s)**

5. Plaintiff(s)/Decedent's Representative is/are suing the following Defendant(s) (check all that apply):

   X      Novo Nordisk Inc.

   X      Novo Nordisk A/S

_____    Eli Lilly and Company

_____    Lilly USA, LLC

_____    other(s) (identify): _____

## JURISDICTION AND VENUE

6.  City and state of Plaintiff(s)' current residence (or in a case brought on behalf of a

Decedent, Decedent's last permanent residence):

Warren, Ohio

7.  State where Plaintiff/Decedent was prescribed the GLP-lRA Product(s) at issue:

Ohio

8.  State of Plaintiffs/Decedent's residence at time of their use of the GLP-lRA Product(s)

at issue:

Ohio

9.  City and state of Plaintiff(s)'/Decedent's residence at time of diagnosis of injury:

Warren, Ohio

10.  Jurisdiction is based on:

___X___    diversity of citizenship pursuant to 28 U.S.C. § 1332

_____    other (plead in sufficient detail as required by applicable rules):

11. The District Court(s) where Plaintiff(s) might have otherwise filed this Short Form

Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

Northern District of Ohio

12.  Venue is proper in the District Court identified in Paragraph 11 because:

___X___ a substantial part of the events and omissions giving rise to Plaintiff(s)'

claims occurred there

_____ other (plead in sufficient detail as required by applicable rules):

_____

_____

13. If applicable, identify the citizenship of any additional Defendant(s) named above:

_____

**PRODUCT USE**

14.  Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

_____        Ozempic (semaglutide)

__X___        Wegovy (semaglutide)

_____        Rybelsus (oral semaglutide)

_____        Victoza (liraglutide)

__X___        Saxenda (liraglutide)

_____        Trulicity (dulaglutide)

_____        Mounjaro (tirzepatide)

_____        Zepbound (tirzepatide)

_____        Other(s) (specify): _____

15.  To the best of Plaintiff(s)' knowledge, Plaintiff/Decedent used GLP-1 RA Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

Wegovy from approximately February 2024 to August 2024

Saxenda from approximately May 2023 to September 2023

**<u>INJURIES AND DAMAGES</u>**

16. To the best of Plaintiff(s)' knowledge, as a result of using GLP-1 RA Product(s),

Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

   __X__      Gastroparesis

   __X__      Other gastro-intestinal injuries (specify): <u>Indigestion (Dyspepsia); Nausea;</u>

<u>Vomiting; Constipation; Decreased Appetite; Stomach (Abdominal) Pain;</u>

<u>Diarrhea; Superior Mesenteric Artery (SMA) syndrome; severe abdominal</u>

<u>pain with diffuse peritonitis; gastric dysmotility; epigastric pain; IBS-C</u>

   __X__      Ileus

   _____      Ischemic Bowel/Ischemic Colitis

   __X__      Intestinal Obstruction

   _____      Necrotizing Pancreatitis

   _____      Gallbladder Injury (specify) _____

   __X__      Micronutrient Deficiency

   _____      Wernicke's encephalopathy

   _____      Aspiration

   _____      Death

   __X__      Additional/Other(s) (specify): <u>Malnutrition; Dehydration; Deep Vein</u>

<u>Thrombosis; failure to thrive; dysphagia; multiple corrective surgeries and</u>

<u>extensive hospital stays for these conditions, and aggravation of emotional</u>

<u>conditions</u>

17. Plaintiff's/Decedent's injuries occurred in approximately (month and year)?

<u>May 2024 through the present</u>

18.  In addition, as a result of Plaintiff's/Decedent's use of GLP-1 RA Product(s), Plaintiff(s) suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

    __X__     Injury to self

    _____     Injury to person represented

    _____     Economic loss

    _____     Wrongful death

    _____     Survivorship

    __X__     Loss of services

    __X__     Loss of consortium

    _____     other(s) (specify):

## **CAUSES OF ACTION**

19.  In addition to adopting and incorporating by reference the Master Complaint as stated above,

more specifically, Plaintiff(s) hereby adopt(s) and incorporate(s) by reference the following

Causes of Action and allegations asserted in the Master Complaint (check all that apply):

| | | |
|---|---|---|
| \_\_\_\_\_ | Count I: | Failure to Warn- Negligence |
| _X_ | Count II: | Failure to Warn- Strict Liability |
| _X_ | Count III: | Breach of Express Warranty/Failure to Conform to Representations |
| _X_ | Count IV: | Breach of Implied Warranty |
| _X_ | Count V: | Fraudulent Concealment/Fraud by Omission |
| _X_ | Count VI: | Fraudulent/Intentional Misrepresentation |
| \_\_\_\_\_ | Count VII: | Negligent Misrepresentation/Marketing |
| _X_ | Count VIII: | Strict Product Liability Misrepresentation/Marketing |
| \_\_\_\_\_ | Count IX: | Innocent Misrepresentation/Marketing |
| \_\_\_\_\_ | Count X: | Unfair Trade Practices/Consumer Protection (see below) |
| \_\_\_\_\_ | Count XI: | Negligence |
| \_\_\_\_\_ | Count XII: | Negligent Undertaking |
| _X_ | Count XIII: | State Product Liability Act (see below) |
| \_\_\_\_\_ | Count XIV: | Wrongful Death |
| _X_ | Count XV: | Loss of Consortium |
| \_\_\_\_\_ | Count XVI: | Survival Action |
| _X_ | Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules): | |
| | _See attached_ | |

8

20.     If Plaintiff(s) is/are asserting a claim pursuant to the unfair trade practices or consumer protection statutes of any jurisdiction as identified in Count X above:*

    a.   Indicate the specific statute (including subsections) under which Plaintiff(s) is/are bringing such claims: <u>n/a</u>

    b.   Identify the factual allegations supporting those claims (by subsection, if applicable): <u>n/a</u>

***\* Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.***

21.    If Plaintiff(s) is/are asserting a claim pursuant to the Product Liability Act

("PLA") of any jurisdiction as identified in Count XIII above:*

a.    Indicate the specific statute (including subsections) under which Plaintiff(s) is/are

bringing such claims:

Ohio Product Liability Act ("OPLA").  *See* R.C. §§ 2307.75, 2307.76, 2307.77.

b.    Identify the legal theories identified in Paragraph 19 above (e.g., negligent failure

to warn, fraud, etc.) that are subsumed within Plaintiff(s)' PLA claim:

Negligent failure to warn; negligent misrepresentation; negligence; negligent

undertaking

c.    Identify the factual allegations supporting those claims:

*See* attached allegations

***Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA***

***claims with the requisite specificity will result in the short form complaint being stricken with***

***only one opportunity to amend." Opinion (ECF 465) at 76 n.35.***

22.    If pre-suit notice is required by statute, did Plaintiff(s) provide some form of

separate pre-suit notice to Defendant(s)? n/a. If so, attach such notice.

## RELIEF

Plaintiff(s) pray(s) for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the Master Complaint, as appropriate, and any additional relief to which Plaintiff(s) may be entitled.

## JURY DEMAND

Plaintiff(s) hereby demand(s) a trial by jury as to all claims triable by jury in this action.

DATED: October 31, 2025                    Respectfully submitted,

                                           **PRODUCT INJURY LEGAL GROUP, LLC**

                                           */s/ Andrew J. Feldman*
                                           Andrew J. Feldman, MO Bar #61005
                                           1200 S. Big Bend Blvd.
                                           St. Louis, MO 63117
                                           Phone: (888) 537-3563
                                           Facsimile: (314) 334-8063
                                           afeldman@productinjurylegal.com
                                           *Attorney for Plaintiff*

## COUNT XIII
## <u>STRICT LIABILITY – FAILURE TO CONFORM TO REPRESENTATIONS</u>

23.     Plaintiff incorporates by reference each material fact set forth in the Master Complaint and the allegations stated above as if fully set forth herein.

24.     This cause of action is authorized by the Ohio Product Liability Act ("OPLA"). *See* R.C. § 2307.77.

25.     Defendants' Wegovy product is defective because it did not conform, when leaving Defendants' control, when they represented:

a.     the design of the product so as to avoid an unreasonable risk of harm to individuals in whom the product was injected into, including the Plaintiff;

b.     the manufacture of the product so as to avoid an unreasonable risk of harm to individuals in whom the product was injected into, including the Plaintiff;

c.     the testing of the product so as to avoid an unreasonable risk of harm to individuals in whom the product was injected into, including the Plaintiff;

d.     the inspecting of the product so as to avoid an unreasonable risk of harm to individuals in whom the product was injected into, including the Plaintiff; and

e.     misrepresenting the designing, marketing, labeling, packaging, and/or selling of the Wegovy product.

26.     The Defendants' misrepresentations caused the Wegovy product to be unreasonably dangerous and defective include, but are not limited to: intentionally provided Plaintiff, her healthcare providers, the general medical community, and the public with false, fraudulent, and/or incorrect information or omitted or failed to disclose material information concerning Wegovy, including, but not limited to, misrepresentations and marketing regarding

12

the long term effects of Wegovy, including, but not limited to the fact weight lost will be regained upon cessation of the drug.

27.    Defendants made express representations of material fact concerning the character, quality, and safety of their Wegovy product, including misrepresenting that Wegovy is safe and effective and does not cause chronic conditions.

28.    The Wegovy that was injected into Plaintiff did not conform to the above-referenced representations.

29.    Plaintiff and her prescribing physician justifiably relied on the above-referenced representations regarding Wegovy.

30.    Plaintiff's justifiable reliance on the above-referenced representations are the direct and proximate cause of her injuries addressed herein.

31.    The Defendants' Wegovy product is dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable uses, and does not meet or perform to the expectations of patients and their health care providers.

32.    Plaintiff brings strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second) and pursuant to R.C. § 2307.77 against Defendants.

33.    Defendants had and have a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiff, the FDA, and the public, that the Wegovy product had not been adequately tested and found to be safe and effective for treatment of permanent weight loss.  The representations made by Defendants, in fact, are false.

34.    Defendants failed to exercise ordinary care in the representations concerning the Wegovy product while they were involved in their sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants misrepresented the Wegovy

product's high risk of unreasonable, dangerous, adverse side effects. Defendants' above-referenced failures continue to this day.

35.    Defendants breached their duty in representing that the Defendants' Wegovy product has no serious side effects different from older generations of similar products to Plaintiff, Plaintiff's physicians, and the medical and healthcare community. Defendants' above-referenced breaches continue to this day.

36.    At all relevant times, the Novo Nordisk Defendants knew or should have known that the use of Wegovy could cause Plaintiff's injuries, and thus, created a dangerous and unreasonable risk of injury to the users of these products that the Novo Nordisk Defendants misrepresented.

37.    The Novo Nordisk Defendants knew, or in the exercise of reasonable care, should have known that users and consumers were unaware of the risks and magnitude of the risks associated with the use of Wegovy.

38.    In disregard of their duties, the Novo Nordisk Defendants committed one or more of the following misrepresentations or omissions:

a.    Manufacturing, producing, overpromoting, marketing, formulating, creating, developing, designing, selling, and distributing Wegovy, without thorough and adequate pre- and post-market testing of the product;

b.    Manufacturing, producing, overpromoting, marketing, advertising, formulating, creating, developing, and distributing Wegovy, and upon information and belief, while misrepresenting or concealing, and failing to disclose clinical data which demonstrated the risk of serious harm associated with the use of Wegovy;

14

c.  Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Wegovy was safe for its intended use;

d.  Upon information and belief, misrepresenting or failing to disclose and warn of the product defects to the regulatory agencies, the medical community, and consumers that the Novo Nordisk Defendants knew and had reason to know that Wegovy was indeed unreasonably unsafe and unfit for use by reason of the product's defects and risk of harm to its users;

e.  Misrepresenting or failing to warn Plaintiff, the medical and healthcare community, and consumers that Wegovy's risk of harm was unreasonable and that there were safer and effective alternative products available to Plaintiff and other consumers;

f.  Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would use Wegovy;

g.  Advertising, marketing, and recommending the use of Wegovy, while misrepresenting and failing to disclose or warn of the dangers known by the Novo Nordisk Defendants to be connected with, and inherent in, the use of Wegovy;

h.  Representing that Wegovy was safe for weight loss when in fact the Novo Nordisk Defendants knew and/or should have known the product was not safe for those purposes;

i.  Continuing to manufacture and sell Wegovy with the knowledge that Wegovy, when used for weight loss, was unreasonably unsafe and dangerous;

j.  Failing to use reasonable and prudent care in the design, research, testing, manufacture, and development of Wegovy so as to avoid the risk of serious harm

associated with the use of Wegovy.  Failing to design and manufacture Wegovy so as to ensure the drugs were at least as safe and effective as other similar products;

k.  Failing to ensure that Wegovy was accompanied by proper and accurate warnings about the risk of gastrointestinal injuries;

l.  Failing to ensure that Wegovy was accompanied by proper and accurate warnings about possible adverse side effects associated with the use of Wegovy and that use of Wegovy created a high risk of severe injuries; and

m.  Failing to conduct adequate testing, including pre-clinical and clinical testing, and post-marketing surveillance to determine the safety of Wegovy.

39.    A reasonable manufacturer, designer, distributor, promoter, or seller under the same or similar circumstances would not have engaged in the aforementioned misrepresentations and omissions as the Novo Nordisk Defendants did.

40.    As a direct and proximate result of Defendants' failure to conform to representations, the Plaintiff has experienced significant mental and physical pain and suffering, sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages. Plaintiff will continue to suffer the above-referenced and new injuries until death.

41.    The aforementioned wrongs done by the Novo Nordisk Defendants were aggravated by the kind of willful and wanton conduct and disregard for the rights of others, the public, and Plaintiff, for which the law allows the imposition of exemplary or punitive damages, in that the Novo Nordisk Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and both the Novo Nordisk

Defendants and proceeded with a reckless disregard to the rights, safety, or welfare of others, including Plaintiff.

42.    The Novo Nordisk Defendants are liable in tort to Plaintiff for their wrongful conduct pursuant to Ohio law.

43.    As a direct and proximate result of one or more of the above-stated failure to conform to representations by the Novo Nordisk Defendants, Plaintiff suffered bodily injuries and consequent economic and other losses, including pain and suffering, loss of a normal life, medical expenses, lost income and disability, and punitive damages.

**COUNT XIII**
**STRICT LIABILITY – DESIGN DEFECT**

44.    Plaintiff incorporates by reference each material fact set forth in the Master Complaint and the allegations stated above as if fully set forth herein.

45.    This cause of action is authorized by the OPLA. *See* R.C. § 2307.75.

46.    The Novo Nordisk Defendants are liable to Plaintiff for the injuries and damages sustained due to Defendants' defective design and/or formulation of Wegovy.

47.    At all relevant times to this lawsuit, the Novo Nordisk Defendants did not properly design, test, study, and manufacture Wegovy.

48.    The Novo Nordisk Defendants failed to:

a.    design Wegovy as to properly minimize the adverse effects to the nervous, gastrointestinal and immune systems;

b.    counteract in the design the known adverse effects on the nervous, gastrointestinal and immune systems;

c.    design a product where the benefits were greatly outweighed by the risks of gastroparesis, hospitalization, and death;

17

d.   design a product without taking into consideration the proper dosage that could avoid gastroparesis, hospitalization, and death.

49.   Furthermore, Ozempic was defective in design or formulation in that, when it left the hands of the Defendants and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design or formulation.

50.   At all reasonable times, given their lack of efficacy and increased safety risks, Ozempic did not meet the reasonable expectations of an ordinary consumer, particularly the Plaintiff, or in the alternative, his medical providers.

51.   Wegovy was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other similar drugs.

52.   Despite the Novo Nordisk Defendants' knowledge of the foreseeable risks and unreasonably dangerous nature of Wegovy at all times relevant, Novo Nordisk Defendants designed and brought the product to market and continued to market the drug when there were safer alternatives available, including but not limited to alternate dosing, reduced exposure, among others.

53.   As a result of the Novo Nordisk Defendants' defective design, Plaintiff sustained severe and ongoing injuries.

54.   The defective propensities of the Wegovy product specifically linked to Plaintiff's above-referenced injuries, such that she underwent several corrective surgeries.  If the Wegovy product did not exhibit any defective propensities, there would have been no need to undergo any corrective procedures.

55.     As a direct and proximate result of one or more of the above-stated negligent acts by the Novo Nordisk Defendants, Plaintiff suffered grievous bodily injuries and consequent economic and other losses, including pain and suffering, loss of a normal life, medical expenses, lost income and disability, and punitive damages.

### COMMON LAW FRAUD AND CONSTRUCTIVE FRAUD

56.     Plaintiff incorporates by reference each material fact set forth in the Master Complaint and the allegations stated above as if fully set forth herein.

57.     Plaintiff's fraud claims are not barred by the OPLA since these causes are based on a general duty not to deceive. *See Sylvester v. Ethicon, Inc.,* 2020 WL 1308738, at *5 (N.D. Ohio Mar. 19, 2020) (citations omitted); *see also Stratford v. SmithKline Beecham Corp*., 2008 WL 2491965, at *8-9 (S.D. Ohio June 17, 2008) (citations omitted).

58.     Defendants are in a unique position of knowledge concerning the quality, safety and efficacy of Defendants' Wegovy product, which knowledge is not possessed by Plaintiff or her physicians, and Defendants thereby hold a position of superiority over Plaintiff and her physicians.

59.     Despite their unique and superior knowledge regarding the defective nature of their Wegovy drug, Defendants continue to suppress, conceal, omit, and/or misrepresent information to Plaintiff, the medical community, and/or the FDA, concerning the severity of risks and the dangers inherent in the intended use of the Wegovy drug, as compared to other products and forms of treatment.

60.     Defendants have concealed and suppressed the above-referenced material information, including limited clinical testing, that would reveal that Defendants' Wegovy product has a higher risk of adverse effects, in addition to, and exceeding those associated with

alternative drugs.  Instead, Defendants have misrepresented the safety and efficacy of their Wegovy drug.

61.    At all relevant times, the Novo Nordisk Defendants intentionally provided Plaintiff, her healthcare providers, the general medical community, and the public with false, fraudulent, and/or incorrect information or omitted or failed to disclose material information concerning Wegovy, including, but not limited to, misrepresentations and marketing regarding the safety and known risks of Wegovy.

62.    At all relevant times, the Novo Nordisk Defendants intentionally provided Plaintiff, her healthcare providers, the general medical community, and the public with false, fraudulent, and/or incorrect information or omitted or failed to disclose material information concerning Wegovy, including, but not limited to, misrepresentations and marketing regarding the long term effects of Wegovy, including, but not limited to the fact weight lost will be regained upon cessation of the drug.

63.    The information distributed by the Novo Nordisk Defendants to the public, the medical community, Plaintiff and her healthcare providers, including advertising campaigns, labeling materials, print advertisements, commercial media, and marketing were false and misleading and contained omissions and concealment of truth about the dangers of Wegovy.

64.    The Novo Nordisk Defendants' conduct had the capacity to deceive and/or purpose in making these misrepresentations was to deceive and defraud the public and the medical community, including Plaintiff and Plaintiff's health care providers; to falsely assure them of the quality of Wegovy and induce the public and medical community, including Plaintiff and Plaintiff's prescribing physician to request, recommend, purchase, and prescribe Wegovy.

65.    The Novo Nordisk Defendants had a duty to accurately and truthfully represent and market to the medical and healthcare community, medical pharmaceutical manufacturers, Plaintiff, his healthcare providers and the public, the known risks of Wegovy, including its propensity to cause gastroparesis, its sequalae, and the several other severe conditions Plaintiff suffered.

66.    The Novo Nordisk Defendants made continued omissions in the Wegovy labeling, including promoting it as safe and effective while failing to warn of its propensity to cause gastroparesis, its sequalae, and the several other severe conditions Plaintiff suffered.

67.    The Novo Nordisk Defendants made additional misrepresentations beyond the product labeling by representing Wegovy as a safe and effective treatment for weight-loss with only minimal risks.

68.    The Novo Nordisk Defendants misrepresented and overstated the benefits of Wegovy to Plaintiff, Plaintiff's treaters, and the medical community without properly advising of the known risks to patients.

69.    The Novo Nordisk Defendants made the misrepresentations alleged herein with the intent to induce consumers, like Plaintiff, to take their weight-loss product.

70.    In reliance upon the false and deceptive misrepresentations and omissions and marketing made by The Novo Nordisk Defendants, Plaintiff and Plaintiff's prescribing physician were induced to, and did use and prescribe Wegovy, and relied upon the affirmative misrepresentations and/or omissions in doing so.

71.    As a direct and proximate result of the foregoing negligent misrepresentations and marketing and conduct with capacity to deceive and/or intention to deceive, Plaintiff suffered serious and ongoing injuries.

72.     As a direct and proximate result of the foregoing misrepresentations, marketing, and deceitful intentions, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

73.     The Novo Nordisk Defendants knew or should have known that Plaintiff, Plaintiff's prescribing physician, and the general medical community did not have the ability to determine the true material facts which were intentionally concealed and misrepresented by the Novo Nordisk Defendants.

74.     Plaintiff and their healthcare providers would not have used or prescribed Wegovy had the true facts not been concealed or misrepresented by the Novo Nordisk Defendants.

75.     The Novo Nordisk Defendants had sole access to many of the material facts concerning the defective nature of Wegovy and its propensity to cause serious and dangerous side effects.

76.     At the time Plaintiff were prescribed and administered Wegovy, Plaintiff and Plaintiff's healthcare providers were unaware of the Novo Nordisk Defendants' intentional misrepresentations and omissions.

77.     The Novo Nordisk Defendants made misrepresentations concerning Wegovy while they were involved in their manufacture, design, sale, testing, quality assurance, quality control, promotion, marketing, labeling, and distribution in interstate commerce, because the Novo Nordisk Defendants' carelessly and intentionally misrepresented Wegovy's high risk of unreasonable and dangerous adverse side effects.

78.     Plaintiff and Plaintiff's prescribing physician reasonably relied upon the misrepresentations and omissions made by the Novo Nordisk Defendants, where the concealed

and misrepresented facts were critical to understanding the true and full dangers inherent in the use of Wegovy.

79.    Plaintiff and Plaintiff's prescribing physician's reliance on the foregoing misrepresentations and omissions was the direct and proximate cause of Plaintiff's injuries.

## COUNT XIII
## STRICT LIABILITY – FAILURE TO WARN

80.    Plaintiff incorporates by reference each material fact set forth in the Master Complaint and the allegations stated above as if fully set forth herein.

81.    This cause of action is authorized by the OPLA. *See* R.C. § 2307.76.

82.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic and Wegovy that were used by Plaintiff.

83.    Ozempic and Wegovy were expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by Defendants.

84.    At all relevant times, and at the times Ozempic and Wegovy left Defendants' control, Defendants knew or should have known that Ozempic and Wegovy were unreasonably dangerous because they did not adequately warn of the risk of gastroparesis, the other debilitating conditions Plaintiff suffered, and their sequelae, especially when used in the form and manner as provided by Defendants.

85.    Despite the fact that Defendants knew or should have known that Ozempic and Wegovy caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic and Wegovy to consumers, including Plaintiff, without adequate warnings.

86.     Despite the fact that Defendants knew or should have known that Ozempic and Wegovy caused unreasonably dangerous injuries, Defendants continued to market Ozempic and Wegovy to prescribing physicians, including Plaintiff's prescribing physician, without adequate warnings.

87.     Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

88.     At all relevant times, given their increased safety risks, Ozempic and Wegovy were not fit for the ordinary purpose for which they were intended.

89.     Defendants failed to design, research, test, manufacture, market, supply, promote, advertise, package, sale, and/or distribution of Ozempic and Wegovy into the stream of commerce, in a manner that would not cause users to suffer unreasonable, dangerous injuries, such as gastroparesis and its sequelae, and a duty to adequately warn Plaintiff of potentially dangerous side effects.

90.     At all relevant times, Plaintiff was using Ozempic and Wegovy for the purposes and in a manner normally intended.

91.     At all relevant times, there existed unequal knowledge between the Defendants and the Plaintiff regarding the risk of Ozempic and Wegovy.

92.     The Ozempic and Wegovy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate warnings or instructions, as Defendants knew or should have known that the products created a risk of serious and dangerous injuries, including gastroparesis and its sequelae, as well

as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

93.    The Ozempic and Wegovy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including gastroparesis and its sequalae, as well as other severe and permanent health consequences from Ozempic and Wegovy, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic and Wegovy.

94.    The labels for Ozempic and Wegovy were inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Wegovy, including the risk of gastroparesis, its sequelae, and the other conditions Plaintiff suffered.

95.    The labels for Ozempic and Wegovy were inadequate because they did not warn and/or adequately warn that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis, its sequelae, and the other conditions Plaintiff suffered.

96.    The labels for Ozempic and Wegovy were inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic and Wegovy.

97.    The labels for Ozempic and Wegovy were inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

98.     Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Wegovy, including the risk of gastroparesis, its sequelae, and the other conditions Plaintiff suffered.

99.     Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician were inadequate because Defendants failed to warn and/or adequately warn that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis, its sequelae, and the other conditions Plaintiff suffered.

100.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

101.    Plaintiff's prescribing physician had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his reliance upon Defendants' warnings was reasonable.

102.    Upon information and belief, had Plaintiff's prescribing physician been warned of the increased risks of gastroparesis and its sequalae, which are causally associated with Ozempic and Wegovy, then the prescribing physician would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic and Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

103.    Upon information and belief, had Plaintiff's prescribing physician been warned that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis, its sequelae, and the other conditions Plaintiff suffered, the prescribing

physician would not have prescribed Ozempic and Wegovy and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Wegovy so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Wegovy.

104.    If Plaintiff had been warned of the increased risks of gastroparesis, its sequelae, and the other conditions Plaintiff suffered, which are causally associated with Ozempic and Wegovy, then Plaintiff would not have used Ozempic and Wegovy and/or suffered from gastroparesis, its sequelae, and the other conditions Plaintiff suffered.

105.    If Plaintiff had been warned that Ozempic and Wegovy had not been sufficiently and/or adequately tested for safety risks, including gastroparesis, its sequelae, and the other conditions Plaintiff suffered, then Plaintiff would not have used Ozempic and Wegovy and/or suffered gastroparesis, its sequelae, and the other conditions Plaintiff suffered.

106.    If Plaintiff had been warned of the increased risks of gastroparesis, its sequelae, and the other conditions Plaintiff suffered, which are causally associated with Ozempic and Wegovy, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Ozempic and Wegovy.

107.    Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician that Plaintiff did not want to take Ozempic and Wegovy due to the risks of gastroparesis, its sequelae, and the other conditions Plaintiff suffered, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician would not have prescribed Ozempic and Wegovy.

108.     Considering the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic and Wegovy.

109.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed defective products which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

110.     Defendants' inadequate warnings for Ozempic and Wegovy were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

111.     Said inadequate warnings for Defendants' drugs Ozempic and Wegovy were a substantial factor in causing Plaintiff's injuries.

112.     Plaintiff did not properly consent to have Wegovy injected because Defendants did not inform her prescribing physician of the above-referenced risks, adverse events, and contraindications of Wegovy product that was injected into her.

113.     Plaintiff's prescribing physician will likely claim to not have independent knowledge of the above-referenced risks, adverse events, and contraindications of the Wegovy product that was injected into Plaintiff.

114.     Plaintiff reasonably relied on their prescribing physician's advice and judgment in prescribing Wegovy.

115.     Plaintiff followed her prescribing physician's advice and judgment in using the Wegovy product.

116.     At a minimum, if Defendants provided and conveyed to Plaintiff's prescribing physician all known defective propensities, risks, adverse events, and contraindications of the

Wegovy product, this learned intermediary would have considered this information in her consent processes with Plaintiff. No reasonable physician would knowingly prescribe a defective product and cause associated injuries in their patients. The same can be said for Plaintiff's prescribing physician. Ultimately, it was Plaintiff's decision as to whether or not she would consent to having Wegovy injected in her.

117.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including gastroparesis, its sequelae, and the other conditions Plaintiff suffered, which resulted in other severe and personal injuries which are permanent and lasting in nature, including pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

As a result of the foregoing acts and omissions Plaintiff incurred medical, health, incidental, and related expenses, and required and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## **PUNITIVE DAMAGES**

118.    Plaintiffs incorporate by reference each material fact set forth in preceding paragraphs as if fully set forth herein.

119.    The acts and omissions of Defendants described herein consisted of oppression, fraud, and/or malice, and were done with advance knowledge, conscious disregard of the safety of others, and/or ratification by Defendants' officers, directors, and/or managing agents.

120.    Defendants' actions amounted to actual malice or reckless indifference to the likelihood of harm associated with their acts and omissions.

121.    Defendants sold Wegovy to Plaintiff and other consumers throughout the United States despite their knowledge that Wegovy causes the problems as set forth in this Complaint, thereby causing the severe and debilitating injuries suffered by Plaintiff.

122.    Defendants misled both the medical community and the public, including Plaintiff and her physicians, by making false representations about the safety and effectiveness of Wegovy and by failing to provide adequate instructions concerning its use.

123.    Defendants ignored reports from patients and health care providers throughout the United States and elsewhere that the Wegovy drug's risks, adverse events, and contraindications of the product lead to the severe and debilitating injuries suffered by the Plaintiff and numerous other individuals.  Rather than doing adequate testing to determine the cause of these injuries, or to rule out the Wegovy product's design or the process by which the drug is manufactured as the cause of these injuries, Defendants chose instead to continue to market and sell the Wegovy product, falsely claiming that it is safe and effective.

124.    Defendants downplayed, understated, and/or disregarded their knowledge of the serious and permanent side effects and risks associated with the use of Wegovy despite available information demonstrating that drug could cause gastroparesis, its sequalae, and the other severe injuries Plaintiff sustained that are detailed in this Complaint.

125.    Defendants ignored medical literature, studies, and communications and reports from their own key opinion leaders, experts, employees, agents, and representatives, of the Wegovy drug's serious and permanent side effects and risks associated with its use, which lead to the severe and debilitating injuries suffered by the Plaintiff and numerous other people.  Rather than doing adequate testing to determine the cause of these injuries, or to rule out the Wegovy product's design or the process by which the drug is manufactured as the cause of these injuries,

Defendants chose instead to continue to market and sell the Wegovy product, falsely claiming that it is safe and effective.

126.    Defendants were or should have been in possession of evidence demonstrating that Wegovy use could cause gastroparesis, its sequalae, and the other severe injuries Plaintiff sustained. Nevertheless, Defendants continue to aggressively market Wegovy by providing false and misleading information with regard to its safety and effectiveness.

127.    Defendants failed to provide warnings that would have dissuaded health care professionals from using Wegovy, thus preventing health care professionals, including Plaintiff's prescribing physician, and consumers, including Plaintiff, from weighing the true risks against the benefits of using Wegovy.

128.    Defendants withheld and continue to withhold material information from the medical community and the public in general, including the Plaintiff, regarding the safety and efficacy of the Wegovy product.

129.    Defendants knew and recklessly disregarded the fact that the Wegovy product caused debilitating and potentially life altering complications with greater frequency than feasible alternative methods and/or products used to treat weight gain.

130.    Defendants misstated and misrepresented data and continue to misrepresent data so as to minimize the perceived risk of injuries caused by the Wegovy product.

131.    Notwithstanding the foregoing, Defendants aggressively marketed and continue to market the Wegovy product to consumers, without disclosing the true risks associated with this drug.

132. Defendants knew of the Wegovy product's defective and unreasonably dangerous nature, but continue to manufacture, market, distribute, and sell this drug so as to maximize sales and profits at the expense of the health and safety of the public, including the Plaintiff.

133. Defendants continue to conceal and/or fail to disclose to the public, including the Plaintiff, the serious complications associated with the use of the Wegovy product to ensure continued and increased sales of this product as well as other GLP-1RA products.

134. As a proximate result of Defendants' acts and omissions, Plaintiff was diagnosed with Superior Mesenteric Artery (SMA) syndrome, failure to thrive, dysphagia, duodenal obstruction, gastric outlet obstruction, small bowel obstruction, severe abdominal pain with diffuse peritonitis, severe malnutrition, gastric dysmotility, epigastric pain, chronic constipation, IBS-C, gastroparesis, nausea, vomiting, ileus, and acute embolism and thrombosis of unspecified DVT; several other conditions that will be disclosed in discovery; and underwent multiple corrective surgeries and extensive hospital stays for these conditions due to Plaintiff's use of Wegovy.

135. As a result of Plaintiff's injuries, Plaintiff has endured substantial pain and suffering, has incurred significant expenses for medical care, and will remain economically challenged and emotionally harmed.

136. Plaintiff has suffered and will continue to suffer economic loss and has otherwise been emotionally and economically injured.

137. Defendants' actions were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiff and the public.

138. Plaintiff's injuries and damages are severe, permanent, and will continue into the future. As a result, Plaintiff seeks actual and punitive damages from the Defendants.

139.    Defendants' conduct was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

140.    Defendants' acts were intentional, reckless, gross, outrageous, willful and wanton, and proximately caused injury to the Plaintiffs, thereby justifying an award of punitive damages.

141.    Consequently, Defendants are liable for punitive damages in an amount to be determined by the jury.

## CERTIFICATE OF SERVICE

I, Andrew J. Feldman, certify that on October 31, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this action.

/s/ Andrew J. Feldman
*Attorney for Plaintiffs*